## In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| Patrick Jay Wall, #16649,      ) | Civil Action No. 9:07-1095-HMH-GCK |

Patrick Jay Wall, #16649, )

    Plaintiff, )

  vs. )

Simon Major, Jr., Director of )
Sumter-Lee Regional )
Detention Center; )

    Defendant. )

Civil Action No. 9:07-1095-HMH-GCK

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

## I.  INTRODUCTION

The Plaintiff, Patrick Jay Wall ("Plaintiff" or "Wall"), was a pre-trial detainee in the Sumter-Lee Regional Detention Center ("SLRDC") at the time of the alleged incidents giving rise to this action.  Proceeding *pro se*, he seeks relief from the above-captioned Defendant, Simon Major, Jr., Director of SLRDC ("Defendant" or "Major"), alleging that the Defendant, in violation of 42 U.S.C. § 1983,[1] denied him proper medical treatment for an insect bite which he suffered while detained at the SLRDC.  The Plaintiff seeks monetary damages.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.SC. § 1983, and submit findings and recommendations to the District Court.

---

[1] 42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

## II.  THE *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean

that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff commenced this action on April 21, 2007,[2] alleging that in the early morning of January 25, 2007, he was bitten on his right cheek by a spider, or some type of insect. The Plaintiff awoke to find that his face had started to swell and that he had lost vision in his right eye.  He told an officer on duty about his injury, and was instructed to fill out a medical request form.  Later that day, he saw a nurse at the SLRDC, who put in a request for him to see a doctor, and on January 26, the Plaintiff saw Dr. Floyd, who prescribed Keraflex, an antibiotic. By that time, the Plaintiff was feeling "very ill" and had a fever, was nauseated, and his face was swollen to the point that his eye was almost completely closed.  On January 27, the Plaintiff was sick and vomiting.  He was helped down the hallway to medical and was seen again; the swelling had caused his eye to completely close.  He asked about the prescription and was told it had been ordered.[3]

On January 28, the Plaintiff was so ill that he could not get out of bed.  That evening, a nurse brought him a pill to take.  On the morning of January 29, he passed out and fell on the floor, and EMS transported him by ambulance to Tuomey Hospital in Sumter.  A CAT scan and

---

[2]     Should a limitations issue arise in this action, Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the delivery date of his complaint.  *See* this court's Order [7] filed on April 27, 2007.

[3]     Complaint [1] at ¶¶ 1-10.

x-rays were taken, medication was administered, and the Plaintiff remained hospitalized through February 3, 2007. On that day, Officer Lighty was guarding him. The Plaintiff was given some pills and a bottle of Tobradex eye drops to use, and was told by Dr. Raybon that he should continue to take the pills after leaving the hospital and returning to the SLRDC. Dr. Raybon wanted to see the Plaintiff in ten (10) days. The Plaintiff told Dr. Raybon that he would not be able to receive the medication after he went back to SLRDC.[4] Officer Lighty intruded on the conversation between the Plaintiff and Dr. Raybon and then started an argument with the Plaintiff about the medication he should be receiving. Dr. Raybon wanted to send the medication with the Plaintiff; the SLRDC was telephoned, and Dr. Raybon was told the Plaintiff would have no problem getting the medication at the SLRDC.[5] The Plaintiff also had seen the eye doctor while at Tuomey and was given a bottle of Tobradex eye drops to use.[6]

Although the Plaintiff returned to the SLRDC on the afternoon of February 3, 2007, he did not receive any medication that day and was told that the medication had to be ordered. The Plaintiff began receiving his medication on the evening of February 6, and then received his medication for the next ten days. The Plaintiff was not able to follow up with Dr. Raybon at Tuomey, and began to write requests to medical. He was taken to Sumter Eye Care, and told to stop using the Tobradex eye drops so that his vision would improve. The Plaintiff's vision began to worsen, so Plaintiff put in several requests to see a doctor, and was seen by Dr. Bush at SLRDC in late March or early April. He was told that he would have to pay to see an eye

---

[4]    The reason that the Plaintiff told this to Dr. Raybon is not known.

[5]    Complaint [1] at ¶¶ 11-21.

[6]    Complaint [1] at ¶ 22.

doctor.  The Plaintiff disagreed, believing that the jail should pay for the eye doctor because the injury was not his fault.  On April 19, 2007, the Plaintiff wrote a grievance (#00415) about the improper medical care and stated that SLRDC should pay for the visit to the eye doctor.[7]  The Plaintiff states:  "If I had received proper medical attention I would not have to have been hospitalized and I would have regained my eye sight by now."[8]  The Plaintiff seeks payment of all of his medical bills with respect to the insect bite, including future eye care for his right eye, including any medication or treatment necessary to restore the sight in his right eye, as well as glasses or contacts.  He also seeks compensation for pain and suffering and loss of sight.  Finally, on behalf of all detainees, the Plaintiff seeks the promise that medication will be received within 24 hours, that "all detainees [who] are hospitalized and need medication upon release from the hospital be required to bring it from the hospital with them," and that "all detainees [who] require follow up visits by a doctor receive them with no excuses from SLRDC."[9]

An Order was issued on April 27, 2007 which authorized service of process by the Clerk of Court for service of process by the United States Marshals.  [7]  On July 2, 2007, an answer was filed on behalf of the Defendant, and on August 16, 2007, a motion for summary judgment, with a supporting memorandum and exhibits was filed.  [17]  Accordingly, an Order was issued on August 20, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying

---

[7]        Complaint [1] at ¶¶ 23-28.

[8]        Complaint [1] at ¶¶ 29-30.

[9]        Complaint [1] at p. 5.

the Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion for summary judgment within thirty-four (34) days.  [20]

On September 10, 2007, the Plaintiff filed a response in opposition to the Defendant's motion for summary judgment, along with certain documents, including medical requests, grievance forms, and medical records.  [22]  The Plaintiff specifically stated that he was not suing Defendant Major in his individual capacity, but that his lawsuit was "strictly against" SLRDC "and all relevant concerned parties."[10]  On September 20, 2007, a reply was filed on behalf of the Defendant, which argued that the action should be dismissed as against Defendant Major because the Plaintiff admits his allegations are not against him.  [24]

As the court liberally construes the Plaintiff's *pro se* claims to be against the Defendant in his official capacity, it will turn to the merits of the case.

## IV.  DISCUSSION

### A.  Summary Judgment Standard

The determination of Defendant's motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Id. at 323; Fed. R. Civ. P. 56(c).

Summary judgment is proper if, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[10]     Plaintiff's Objection [22] at p. 1; *see also* p. 4 ("The Plaintiff . . . is not suing Simon Major in his individual capacity.  The Plaintiff is suing the [SLRDC] and all other concerned parties."

with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence. *Ross*, 759 F.3d at 364. Put another way, all justifiable inferences must be drawn in favor of the non-moving party. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Accordingly, this Court must enquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B.  Exhaustion of Administrative Remedies

As a threshold matter, the court will address whether Plaintiff has exhausted his available administrative remedies.  *See Anderson v. XYZ Correctional Health Svcs.*, 407 F.3d 674 (4th Cir. 2005).  The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a Section 1983 action concerning his confinement.  42 U.S.C.A. §1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson*, 407 F.3d at 677, and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.").  Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983.  *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).  A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove.  *Jones v. Bock*,  ---U.S. ----, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007); *Anderson*, 407 F.3d at 681.

The Defendant specifically pled as an affirmative defense that the Plaintiff's action was barred by his failure to exhaust all state and administrative remedies before filing suit, and that

the Plaintiff's claims were barred, in whole or in part, by the PLRA.[11]  The Defendant also argued in his motion for summary judgment that the Plaintiff had failed to exhaust his administrative remedies, relying upon the Affidavit of Daryl McGhaney, Assistant Director of the SLRDC, which states that the Plaintiff never filed a grievance regarding his allegedly inadequate medical care received at the SLRDC.[12]

The Plaintiff stated in his Complaint that he had filed a grievance on April 19, 2007 about the improper medical care (Grievance #00415) and had turned it in to Officer Green that day.[13]  The court has reviewed Grievance #00415,[14] and notes that the Plaintiff complained that his eye injury "was due to negligence on the part of SLRDC."  The Plaintiff asked:  "Could you tell me if I could have proper medical care for that injury."[15]  Officer Green signed for the grievance, and it appears that some action was taken by SLRDC, but the reply is not legible.[16] As the court finds that the Defendant has not proven to the satisfaction of the court that the Plaintiff failed to exhaust his administrative remedies, the court will address the claims set forth in the case.

### C.  The Merits of the Plaintiff's Case

### 1.  Introduction

---

[11]    Answer [13] at ¶¶ 13-14.

[12]    Memorandum [17] at p. 3.

[13]    Complaint [1] at handwritten p. 5.

[14]    *See* [17-7] at p. 9.

[15]    *Id.*

[16]    *Id.*

As a *pro se* litigant, the Plaintiff's Complaint must be construed liberally by this court. Nevertheless, a careful review of all of the pleadings in this case has led this court to recommend, for the reasons set forth below, that the Defendant be granted summary judgment.

## 2.  Plaintiff's Action Pursuant to Section 1983

The United States Supreme Court has held:  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42 (1988).  Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).

Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment.  *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).  However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need).  *See Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (*citing Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs.  *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

## 3.  Deliberate Indifference–Non-medical Personnel

The Fourth Circuit has held that to bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were

indifferent to the prison doctors' misconduct.  *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990).

The Fourth Circuit Court of Appeals has held that:

> in cases where the government is accused of failing to attend to a detainee's serious medical needs, and in cases where the government is accused of failing to protect a detainee from a substantial risk of physical harm "conduct that amounts to 'deliberate indifference' . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim."

*Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004).  An inmate or detainee who alleges deliberate indifference must meet "a very high standard-a showing of mere negligence will not meet it."  *Id.* (*citing Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)).  To be held liable for such allegations, an officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* This standard necessitates "a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."  *Id.*

The *Parrish* court goes further in its analysis:

> Liability under this standard thus requires two showings.  First, the evidence must show that the official in question subjectively recognized a substantial risk of harm.  It is not enough that officers should have recognized it; they actually must have perceived the risk.  Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk."  As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient.

*Id.* at 303 (internal citations omitted).  According to the Court, the risk of harm must be "so obvious that the fact-finder could conclude that the [officer] did know of it because he could not have failed to know it."  *Id.* (citations omitted).

In the present case, the Plaintiff has failed to show that the Defendant knew of any potential risk of harm.  In that regard, the Plaintiff is also unable to show that the Defendant disregarded or ignored either the risk of harm or any of the Plaintiff's serious medical needs.

The gravamen of the Plaintiff's Complaint is that he received inadequate medical care after he was bitten by a spider on January 25, 2007. However, the Plaintiff's lawsuit only names as a defendant the Defendant Major, who has had no involvement with the Plaintiff's issue of medical care.[17] In fact, medical treatment is not provided by employees of Sumter County or of the SLRDC.[18] Since February 1, 2007, medical treatment at the SLRDC is contracted out to and provided by Southern Health Partners.[19] Prior to February 1, the SLRDC had a similar contract with a different medical provider.[20] Neither of these medical contractors were employees of Sumter County, and the Defendant did not supervise them or take part in the medical care they administered. Since the Defendant was not involved in providing medical care, the Plaintiff's claims against the Defendant is without merit.

Even if the Plaintiff could show that the Defendant were involved in providing medical care, the Plaintiff cannot establish liability. The Plaintiff's allegations of improper medical care must reach the standard of deliberate indifference. At no point in the Plaintiff's allegations has he alleged his needs were ignored or disregarded. The Plaintiff was seen by medical after the alleged spider bite. A few days later, the Plaintiff was transported to the hospital, where he stayed several days. The Plaintiff provides no evidence of deliberate indifference on behalf of any person mentioned in his Complaint. Moreover, the Plaintiff fails to show that the Defendant was involved in any way with his medical care.

To move forward on a claim of deliberate indifference, the Plaintiff must show that the Defendant "actually knew of and disregarded" a serious medical need, a need so obvious that "he

---

[17]     See Major Affidavit [17-6] at ¶ 16.

[18]     *Id.* at ¶ 4.

[19]     *Id.* at ¶ 5.

[20]     *Id.*

could not have failed to know [about the medical need]." The Plaintiff does not mention Defendant Major in his complaint. More importantly, the Plaintiff's complaint fails to show any evidence of any person ignoring or disregarding his medical needs. Without showing that the Defendant knowingly disregarded a serious medical need, the Plaintiff's claim fails. Because the Defendant cannot be held liable on a theory of deliberate indifference of a serious medical need, it is recommended that the Defendant's motion for summary judgment be granted.

### 4. Plaintiff's Claims against Sumter County

Plaintiff contends that the risk of spider bites posed a known and substantial risk of harm.[21] To the extent that the Plaintiff seeks to impose liability against Sumter County with respect to conditions of confinement, these claims must fail. In *Farmer v. Brennan*, 511 U.S. 825 (1994) the United States Supreme Court analyzed an inmate's conditions claim and set forth the test for evaluating such claims in the future.[22] The Court held prison officials must provide "humane conditions of confinement," specifically, "adequate food, clothing, shelter, and medical care, and must take 'reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (citations omitted). In order to state a conditions claim, an inmate must meet both an objective and subjective requirement. First, an inmate must show that the conditions were objectively serious enough to pose a substantial risk of serious harm. Second, the inmate must show the prison official's state of mind was one of deliberate indifference. *Id.* at 838.

---

[21]    Plaintiff's Objection [22] at p. 3.

[22]    Although *Farmer v. Brennan* dealt with a sentenced inmate under an Eighth Amendment claim, it is well-settled that the Due Process Clause of the Fourteenth Amendment guarantees pre-trial detainees such "humane conditions of confinement," but the Eighth Amendment provides the benchmark for such claims. Thus, the standards set forth in *Farmer v. Brennan* are applicable even though the Plaintiff is a detainee. *See Blaine v. Fox*, No.: 07-0807, 2007 WL 1423750 *3, n.2 (D.S.C. May 10, 2007).

In the present case, the Plaintiff is unable to meet the objective and subjective requirements.  The Plaintiff alleges he was bitten by a spider on January 25, 2007.  As the District Court of South Carolina has observed, "[the] Plaintiff was being held in a county jail facility, not a hotel.  It should be expected that conditions in such a setting are often times less than ideal."  *See Lasure v. Doby*, 2007 WL 1377694 *5 (D.S.C. May 8, 2007) (citations omitted). The SLRDC takes measures to prevent spiders or insects from inhabiting SLRDC, which includes monthly spraying by exterminators.[23]  The Plaintiff argues that the fact that the SLRDC is sprayed once a month for insects and spiders is evidence that "there was a serious problem at SLRDC with spiders and insects;" and reasons that if the spider and insect problem were not serious, there would be no need to spray every month.[24]  The Plaintiff sets forth no evidence by affidavits or other means to show that spider or insect bites are a serious problem of the SLRDC, but instead simply states "I learned that a lot of people at this jail, employees as well as detainees, had been bitten by spiders, brown recluse and black widow."[25]

The Plaintiff cannot show the risk of spider bites was objectively serious enough to pose a substantial risk of harm.   The SLRDC has not received any complaints by either inmates or employees to support this allegation.[26]  Further, the Plaintiff's medical records do not show that his own injury was the result of a brown recluse or black widow.[27]  Without first receiving complaints about the alleged problem, Defendant Major could not be expected to know of the a

---

[23]    *See* Major Affidavit [17-6] at ¶ 15.

[24]    *Id.*

[25]    Complaint [1] at ¶ 5.

[26]    *See* Major Affidavit [17-6] at ¶ 15.

[27]    *See* Plaintiff's medical records, attached as Exhibit 1 to Major Affidavit [17-6] *see also* Major Affidavit at ¶ 15.

risk of harm.  Thus, the Plaintiff cannot satisfy the objective requirement of his conditions claim.

The Plaintiff also alleges Officer Earl Lighty, a corporal at the SLRDC, was involved in an argument at the hospital during the Plaintiff's treatment.  Officer Lighty has no specific recollection of providing security over the Plaintiff at the hospital, although he has at times provided security over inmates who are transported to the hospital.[28]  Officer Lighty's job duties do not include anything to do with medical care and he has never interjected his opinion to any doctor regarding an inmate's medical treatment.[29]  Officer Lighty's focus, when he provides security, is solely on maintaining custody and control of the inmate.[30]  Officer Lighty did not interfere with the doctor or the Plaintiff's medical treatment at any time.[31]  The Plaintiff fails to provide any evidence that Officer Lighty's alleged actions constituted an objectively serious risk.  Assuming the truth of the Plaintiff's allegations in his complaint, the Plaintiff nonetheless fails to allege how Officer Lighty's statements had any effect on his medical care.  Thus, the Plaintiff cannot meet the objective requirement with respect to his conditions of confinement claim.

Even though the court's analysis could end here, the court nonetheless notes that even if the Plaintiff had met the objective requirement, the Plaintiff is unable to establish the subjective requirement.  To meet the subjective requirement, the Plaintiff must show Defendant Major acted or failed to act with a state of mind of deliberate indifference.  Significantly, the Plaintiff fails to mention Defendant Major at any time in his complaint.  It follows, then, that the Plaintiff has not provided any evidence of Defendant Major's state of mind.  Regardless, as noted above, the SLRDC has the detention center sprayed for insects and spiders monthly.  As action to

---

[28]     *See* Lighty Affidavit [17-3] at ¶ 4.

[29]     *Id.* at ¶ 5.

[30]     *Id.* at ¶ 6.

[31]     Id. at ¶ 8.

prevent insect and spiders from inhabiting the detention center was taken, no deliberate indifference to the risk can be inferred upon Defendant Major.

As to the Plaintiff's allegations regarding Officer Lighty, the Plaintiff makes no mention of Officer Lighty's state of mind. As such, the Plaintiff is unable to satisfy the subjective requirement of his conditions claim. The Plaintiff does not satisfy either the objective or subjective component necessary to state a conditions of confinement claim under the Fourteenth Amendment. As a result, the Plaintiff fails to meet his burden, and the Defendant should be granted summary judgment.

### 5. Supervisory Liability

The Defendant Simon Major serves as the Director of the SLRDC. The Plaintiff's complaint does not mention Defendant Major, except for naming him in the Plaintiff's caption. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court ruled a claim based solely on the doctrine of *respondeat superior* does not give rise to a valid Section 1983 claim. A necessary element of a Section 1983 claim is the personal participation of the government official named in his individual capacity. *See Davis v. D.S.S. of Baltimore Cty.*, 941 F.2d 1206 (4th Cir. 1991) (Table) (citations omitted); *see also Truluck v. Freeh*, 275 F.3d 391 (4th Cir. 2001). The Plaintiff has failed to show any personal participation on the part of Defendant Major in any of the alleged deprivations. Because medical care for the inmates in the SLRDC is contracted out, Defendant Major had no involvement in the events set forth in the Plaintiff's allegations. Therefore, the Plaintiff cannot maintain a claim against Defendant Major.

The Plaintiff is also unable to establish a theory of supervisory liability against Defendant Major. The Fourth Circuit has held that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *See Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). The *Stroud* Court set forth three elements that must be shown to

establish the theory of supervisory liability: 1) actual or constructive knowledge on behalf of the supervisor that the subordinate's conduct was a "pervasive and unreasonable risk" to the inmate's constitutional rights; 2) deliberate indifference or implied authorization of the conduct by the supervisor; and an 3) "affirmative causal link" between the supervisor's inaction and the inmate's alleged constitutional deprivation.  *Id*. at 799 (citations omitted).  To prove the first element, the Plaintiff must show the supervisor had knowledge of the alleged conduct that was widespread, as opposed to a singular occurrence. *Id*.  As noted above, there has been no series of complaints by either inmates or employees about spiders in the SLRDC.  Furthermore, the Plaintiff fails even to mention Defendant Major in his complaint.  Thus, the Plaintiff has failed to set forth any evidence that Defendant Major possessed knowledge of any widespread risk of harm.  Without such evidence, the Plaintiff cannot establish the first element, and his claim must fail.

Next, the Plaintiff cannot meet the second element as he is unable to show Defendant Major's alleged actions or inactions amounted to a showing of deliberate indifference.  The Plaintiff makes no factual allegations in regards to Defendant Major from which an inference of either deliberate indifference or implied authorization could be drawn.  Therefore, the Plaintiff is unable to meet the second element, and again his claim must fail.  Finally, the Plaintiff cannot meet the third element of necessary to establish supervisory liability, as there exist no causal relationship between the Plaintiff's allegations and Defendant Major.  Defendant Major had no personal involvement with the Plaintiff.[32]  Moreover, the Plaintiff's alleged injury stems from a supposed spider bite.  The SLRDC has the detention center sprayed for insects and spiders monthly.  As the Defendant was not involved in the medical care of the Plaintiff, the Plaintiff cannot connect Defendant Major in any way to his alleged injuries set forth in his complaint.

---

[32]    Major Affidavit [17-6] at ¶ 16.

The Plaintiff cannot establish the requisite three elements necessary to proceed on a cause of action for supervisory liability. Therefore, the Plaintiff's claims against Defendant Major should be dismissed with prejudice.

### 6.  Qualified Immunity

Even if Plaintiff has asserted claims against the Defendant in his individual capacity, the Defendant would be entitled to qualified immunity because he has not violated any of Plaintiff's clearly established rights. The Supreme Court, in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity. The Court in *Harlow* held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal citations omitted), *cert. denied*, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1985).

In *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991), the Fourth Circuit Court of Appeals explained the rationale for *Harlow* qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government

> officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

*Torchinsky*, 942 F.2d at 260-261. (Citations omitted). The *Torchinsky* court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." *Id.* at 261. The *Torchinsky* court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. *Id.* "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." *Id.* (*citing Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. *Id.* (*citing Collinson v. Gott*, 895 F.2d 994 (4th Cir. 1990)). As the Fourth Circuit explained in the case of *Swanson v. Powers*, 937 F.2d 965 (4th Cir. 1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." *Id.* at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298 (citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent.  The Plaintiff in this case has not done so.  As stated above, Plaintiff has not even alleged that the Defendant himself violated his constitutional rights.  Clearly, the Defendant has not "transgressed bright lines."  *Maciariello*, 973 F.2d at 298.  Indeed, the Defendant asserts he is entitled to qualified immunity as he has at all times acted reasonably within the course of his employment and he did not violate any clearly established laws.  As previously discussed, the Plaintiff is unable to state a constitutional claim against the Defendant because the Defendant was not involved in the Plaintiff's medical treatment.  The Plaintiff has provided no evidence to even suggest that the Defendant has any link to his medical care, nor has the Plaintiff provided any evidence of how his medical care was insufficient.  Furthermore, the SLRDC is sprayed for insects and spiders monthly, and the Plaintiff lacks sufficient evidence to state a conditions of confinement claim.  Therefore, the Plaintiff's constitutional rights have not been violated, and there is no need to address the second prong of the analysis.

Even assuming, however, that the undersigned found a constitutional violation based on the Plaintiff's claims, the Defendant contends his actions have been objectively reasonable in light of clearly established law, and thus, he is entitled to *Harlow* immunity.  With respect to the Plaintiff's medical care, the Defendant has not been involved in any capacity, as medical care at the SLRDC is contracted out to Southern Health Partners.  As to the Plaintiff's conditions of confinement claim, it is objectively reasonable to have the SLRDC sprayed monthly to prevent insects and spiders from inhabiting the institution.  The Plaintiff is unable to provide any evidence to suggest the Defendant's action or inaction were unreasonable in light of his conditions of confinement claim.  The Defendant has not violated any clearly established law

and was objectively reasonable in light of the Plaintiff's complaint. Therefore, the Defendant is entitled to immunity pursuant to *Harlow*.

### 7. This Action Should be Deemed a Strike.

Lastly, Section 804 of the PLRA, which amended § 1915(g), reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

The instant action is wholly without merit, and should be considered frivolous and malicious within the meaning of the PLRA. Therefore, it is recommended that it be counted as a "strike" against the Plaintiff. *See* 28 U.S.C. § 1915A.

### CONCLUSION

As the evidence of record shows that there is no genuine issue as to any material fact, it is recommended that summary judgment be entered for the Defendant. *See* Fed. R. Civ. P. 56(c).

### RECOMMENDATION

This court finds that Plaintiff's Complaint fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's Complaint likewise could be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii), and the court recommends that Plaintiff's Complaint [1] should be deemed a strike pursuant to 28 U.S.C. § 1915. Accordingly, it is recommended that the Defendant's Motion for Summary Judgment **[17] should be granted.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

October 1, 2007
Charleston, South Carolina

Page 21 of 22

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).